UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD L. SHELTON,<br><br>                              Plaintiff,<br><br>      -against-<br><br>BURGIS D. SETHNA, Individually, and as an Officer of Bank Card New York and Bison Commercial Leasing Corp.,<br>BANK CARD NEW YORK, and<br>BISON COMMERCIAL LEASING CORP.,<br><br>                              Defendants. | Civil Action No.<br>10-CV-4218 (TPG)<br>ECF Case<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Richard L. Shelton, by and through their attorneys, The Law Offices of Steven E. Armstrong PLLC, complaining against the defendants allege the following:

**Nature of the Action**

1. This action is brought by plaintiff Richard L. Shelton against defendants Burgis D. Sethna, Bank Card New York, and Bison Commercial Leasing Corp. (collectively, "Defendants") for fraud, breach of contract, quantum meruit, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and deceptive acts and practices.

2. These claims arise from Defendants' fraudulent scheme to induce plaintiff Richard Shelton to pay them $52,550.00 in order to obtain a letter of credit which the Defendants never intended to provide.

3. In 2007, Mr. Shelton obtained a contract to buy property in Galesburg Illinois for $825,000 and developed plans to use this property to create a retirement community ("Galesburg Project").

4. Based on Mr. Shelton's plans, the Galesburg project required a construction loan of $15,000,000.

5. Based on projections, the Galesburg Project was estimated to have sales revenues of $1.5 million a month based on an average of seven sales per month.

6. The gross sales revenues were projected to be $18 million for the first 12 months.

7. Mr. Sethna directly and through his various corporate alter egos Bison Commercial Leasing, and Bank Card New York represented to Mr. Shelton that he could secure financing through a series of letters of credit that would allow Mr. Shelton ultimately to obtain a letter of credit for $2 million that could then be used to secure the $15,000,000 construction loan.

8. As an initial matter, Mr. Sethna represented to Mr. Shelton that in exchange for $52,550.00, he could provide him with a $500,000.00 letter of credit which would allow Mr. Shelton to finance the Galesburg Project.

9. Mr. Shelton paid Mr. Sethna the $52,550.00. However, Mr. Sethna never intended to secure a letter of credit for Mr. Shelton, never provided such a letter, and never refunded Mr. Shelton his $52,550.00.

10. Instead, the Defendants have engaged in a prolonged scheme to defraud Mr. Shelton by continually representing that the promised financing was coming through a series of various fictional transactions.

11. As a result of his reliance on Mr. Sethna's misrepresentations, Mr. Shelton has lost the $52,550.00 that he paid Mr. Sethna initially, the interest on that money of over $18,000.00 the lost profit of developing the Galesburg Project of approximately $20 million over a 60 month period, and the destruction of Mr. Shelton's credit rating.

## PARTIES

12. At all times relevant to this action, plaintiff Richard Shelton was and remains an individual residing at 9007 Crest Drive, Fairview Heights, IL 62208.

13. Mr. Shelton was a real estate developer in 2007.

14. Upon information and belief, defendant Burgis Sethna is an individual residing in the state and county of New York. Upon information and belief, Mr. Sethna is an Officer and Director of Bison Commercial Leasing Corp.

15. Upon information and belief, Bank Card New York ("Bank Card") is a New York corporation duly organized and existing under the laws of New York with its principal place of business located at 224 West 35th Street, New York, NY 10001 (New York County).

16. Upon information and belief, Bank Card is an alter ego of Mr. Sethna.

17. Upon information and belief, Bison Commercial Leasing Corp. ("Bison Commercial") is a New York corporation duly organized and existing under the laws of New York with its principal place of business located at 224 West 35th Street, New York, NY 10001 (New York County).

18. Upon information and belief, Bison is an alter ego of Mr. Sethna.

## JURISDICTION AND VENUE

19. This court has jurisdiction over the claims asserted in this Complaint in that the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and there is complete diversity between Plaintiff and Defendants. *See* 28 U.S.C. § 1332.

20. Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL BACKGROUND

21. In 2007, Mr. Shelton discovered a property in Galesburg Illinois and conceived of a development project to turn the property into a retirement community.

22. He obtained a contract to buy the property for approximately $825,000 from its owner Freedom Financial.

23. The first phase of the project was to involve the renovation of 88 units. The second phase would involve the construction of 50 or more duplex cottages with a third phase depending upon demand.

24. Mr. Shelton is an experienced developer formerly associated with Smallwood and Associates, a marketing company that had a track record of an average of seven sales per month and is associated with the largest retirement market in the St. Louis area.

25. The Galesburg Project was projected to have sales revenues of $1.5 million a month based on these sales projections, with a total of $20,000,000 for the first phase of the project.

26. Based on Mr. Shelton's plans, the Galesburg project required a $15,000,000.00 construction loan for phase 1 of the project.

27. Over a 60 month period, Mr. Shelton would have made a profit of $20,000,000.

28. On or about October 1, 2007, in order to obtain financing, two individuals that Mr. Shelton was working with on the project, Joseph Mannarino, a mortgage broker of American Bank, and Deloris Johnson, an attorney, introduced him to Burgis Sethna.

29. Mr. Sethna told Mr. Shelton that for $35,550.00 he could obtain for Mr. Shelton a letter of credit for $500,000, the proceeds of which could then be used to obtain a letter of credit for $2 million.

30. With a letter of credit for $2 million, Mr. Shelton could then have the liquidity to secure the construction loan of $15,000,000.00.

31. Mr. Sethna knew that Mr. Shelton was seeking financing for the purpose of obtaining a construction loan for the Galesburg Project and that obtaining that loan depending upon the letters of credit that Mr. Sethna had promised to provide.

32. On or about October 7, 2007, Mr. Sethna demanded that Shelton send $17,000.00 to Bank Card to purchase a corporation in order to procure a letter of credit for $500,000.00, which letter of credit would enable further financing of the Galesburg Project.

33. Mr. Sethna stated to Mr. Shelton that the purchase of the corporation had to be completed immediately and that the letter of credit could not be issued without this corporation. Sethna also stated that failure to do so would result in the failure of the Galesburg Project.

34. On or about October 7, 2007, at Mr. Sethna's direction, Shelton sent a $17,000.00 wire transfer to Bison Commercial.

35. On or about December 5, 2007, Mr. Sethna and Shelton agreed that that Sethna would issue a letter of credit for Shelton within 90 days (i.e., on or before March 6, 2008).

36. On or about December 5, 2007, Mr. Sethna issued a written assurance to Mr. Shelton that in exchange for $32,550.00, Mr. Sethna would obtain from Latin Tiger Funding LLC a letter of credit for $500,000.00 within 90 days on Mr. Shelton's behalf. This letter was issued on stationary labeled "Bison Commercial."

37. On or about December 6, 2007, in reliance on this written assurance, Mr. Shelton purchased an option to extend the time to finalize the purchase of the property for the Galesburg Project by 90 days from the seller (the "tax buyer") for $5,000.00.

38. On or about December 10, 2007, Mr. Sethna verbally indicated to Mr. Shelton that he would obtain a letter of credit on Mr. Shelton's behalf upon payment of $35,550.00.

39. On or about December 18, 2007, Mr. Shelton sent Mr. Sethna a payment equal to $35,550.00 to Bison Commercial Leasing Corp.

40. Neither Mr. Sethna, Bison Commercial Leasing Corp., nor any other entity associated with Burgis Sethna ever provided the promised letter of credit.

41. On May 12, 2008, Francisco Rosaro of Latin Tiger Funding, LLC sent Mr. Shelton by facsimile a contract to obtain the letter of credit for $500,000 for a fee of $87,500.00.

42. There was no mention of the original payment of $35,550.00 or the original promise by Mr. Sethna to provide a letter of credit.

43. In a conference call between Mr. Shelton, Joseph Mannarino, Deloris Johnson, and Mr. Sethna, Mr. Shelton asked for an explanation for why the fee had been increased from $35,550 to $87,500.00.

44. Mr. Sethna stated that the fee was increased because the original deadline of December 10, 2007 was missed.

45. On another occasion, Mr. Sethna stated that the fee had increased to $87,500.00 because the interest for the first year had been included.

46. On still another occasion, Mr. Shelton asked why the contract from Latin Tiger Funding L.C. did not mention interest payments.

47. Mr. Sethna responded that the interest had been waived.

48. On still another occasion, Mr. Sethna stated that the original fee of $35,550.00 was only for a letter of credit for $250,000.

6

49. However, the December 5, 2007 letter from Bison Commercial clearly states that the letter of credit to be issued by Bison Commercial is for $500,000 in exchange for a fee of $35,550.00.

50. Mr. Sethna's repeated false and contradictory statements were an attempt to extract more funds from Mr. Shelton and prevent him from taking action to retrieve the monies that he had already paid to Bison Commercial.

51. Mr. Shelton did not sign the agreement with Latin Tiger Funding, LLC.

52. However, neither Mr. Sethna nor Bank Card or Bison Commercial ever procured a letter of credit on Mr. Shelton's behalf.

53. Mr. Sethna refuses to return any of the funds Mr. Shelton provided him. In fact, he has repeatedly maintained that Mr. Shelton has no right to the return of the $35,550.00.

54. He has instead made various claims that Mr. Shelton will be the beneficiary of financial deals in which Mr. Sethna is involved.

55. In the fall of 2008, Mr. Burgis again represented to Mr. Shelton that he had found Mr. Shelton financing through a separate entity named Creditline America.

56. However, Mr. Sethna insisted that because the financing was through a separate entity, Creditline America, Mr. Shelton's payments to Bison Commercial could not be credited to receive this loan.

57. Mr. Shelton filled out the Creditline America application.

58. In conjunction with the application, Mr. Sethna prepared a list of assets that falsely represented Mr. Shelton's assets.

59. Mr. Shelton told Mr. Sethna that the list of assets was false and as a result he refused to participate in any additional efforts to seek financing with Creditline America.

60. Mr. Shelton never received any financing from Creditline America.

61. In July 2009, Mr. Burgis attempted to have Mr. Shelton participate in a private placement transaction.

62. To complete that transaction, Mr. Burgis asked Mr. Shelton to sign documents in order to enter into a private placement transaction that represented among other things, that Mr. Shelton was a Sophisticated, Accredited and Qualified Investor as defined by SEC regulations (15 U.S.C. § 77b) and that he had sole control over certain unspecified bank funds.

63. Because these statements were false, Mr. Shelton refused to sign.

64. Later in 2009, Mr. Sethna represented to Mr. Shelton that he would be able to receive the financing he wanted by taking part in a deal to finance an interest in a biodiesel fuel plant.

65. According to Mr. Sethna, he would give Mr. Shelton "credit" when it came time to pay his fee as a result of ownership interest in the biodiesel plant which he could then use to obtain financing for his real estate development projects.

66. Mr. Sethna has never provided evidence that such a transaction exists.

67. Mr. Sethna has repeatedly misrepresented to Mr. Shelton that he has found or is in the process of procuring funding for Mr. Shelton. Mr. Shelton has made these misrepresentations for the purpose of extracting money from Mr. Shelton and preventing him from taking legal action to recover the money which Mr. Sethna defrauded from Mr. Shelton.

68. As a result of Mr. Sethna fraud, Mr. Shelton has lost the $52,550.00 that he paid to Bison Commercial, the $5,000 that he paid to extend the contract to purchase the Galesburg Property, the interest of over $18,000 on the money used to pay Mr. Sethna, and the lost profits on the Galesburg Project of approximately $20 million. In addition, Mr. Sethna's fraud has

destroyed Mr. Shelton's credit score as he has been unable to pay creditors with the money fraudulently held by Mr. Sethna.

## AS AND FOR A
## FIRST CAUSE OF ACTION
## (Fraud)

69. Plaintiff repeats and realleges those allegations of the complaint marked and designated as Paragraphs 1 through 68 with the same force and effect as if herein set forth at length and further alleges that:

70. Mr. Sethna, Bank Card, and Bison Commercial represented to Mr. Shelton that they would secure the liquidity necessary for Mr. Shelton to finance the Galesburg Project by first procuring a letter of credit for Mr. Shelton equal to $500,000.00 and then procuring a letter of credit for Mr. Shelton for $2,000,000.

71. Mr. Sethna, acting on behalf of himself and his alter egos Band Card and Bison Commercial, knew these statements to be false at the time they were made to Mr. Shelton.

72. Mr. Sethna made these statements with the intent to defraud plaintiff.

73. Mr. Shelton reasonably and detrimentally relied on Mr. Sethna's oral and written statements.

74. As a result of Shelton's reliance on Sethna's representations, promises and guaranties, plaintiff has suffered damages in an amount no less than $20,052,550.00 plus interest.

## AS AND FOR A SECOND CAUSE OF ACTION
## (Breach of Contract)

75. Plaintiff repeats and realleges those allegations of the complaint marked and designated as Paragraphs 1 through 74 with the same force and effect as if herein set forth at length and further alleges that:

76. Burgis Sethna promised Richard Shelton that he would obtain for Mr. Shelton a letter of credit for $500,000 in exchange for $52,550.00. Mr. Shelton accepted by paying Mr. Sethna the $52,550.00. This transaction constitutes a valid, binding, and enforceable agreement.

77. Mr. Shelton has performed all of his obligations pursuant to his agreements with Defendants.

78. By failing to procure a letter of credit pursuant to their agreements with Plaintiff and their failure to perform other obligations required under those agreements, Defendants have breached each and every one of their contracts with Plaintiffs.

79. As a direct result of Defendants' breaches, Mr. Shelton has suffered damages, including the loss of the benefit of his bargains and the failure of the Galesburg Project in an amount no less than $20,052,550.00 plus interest.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Quantum Meruit)

80. Plaintiff repeats and realleges those allegations of the complaint marked and designated as Paragraphs 1 through 79 with the same force and effect as if herein set forth at length and further alleges that:

81. Based on the representations that Defendants would procure a letter of credit on behalf of Mr. Shelton, Mr. Shelton performed and timely delivered all payments requested by Mr. Sethna.

82. Defendants accepted and retained the funds remitted by Mr. Shelton without objection in each and every instance.

83. As embodied in the terms of the agreements and communications between the parties, Defendants were fully aware and in each and every instance acknowledged that Mr. Shelton expected to receive a letter of credit on or before March 6, 2008.

84. Mr. Shelton's expectation that he would receive a letter of credit as a result of his performance was reasonable.

85. The reasonable value of the services rendered is $52,550 plus interest.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Unjust Enrichment)**

86. Plaintiff repeats and realleges those allegations of the complaint marked and designated as Paragraphs 1 through 85 with the same force and effect as if herein set forth at length and further alleges that:

87. As a result of the foregoing, Mr. Shelton has enriched Defendants by his performance of his obligations to pay based upon his agreements with Mr. Sethna and all Defendants.

88. Defendants' enrichment was solely at Mr. Shelton's expense, as all payments were directly made by plaintiff from his personal funds.

89. These are circumstances that, in equity and good conscience, mandate that Defendants pay restitution to and/or otherwise compensate Mr. Shelton in an amount no less than $52,550 plus interest.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach of the Implied Covenant of <u>Good Faith and Fair Dealing</u>)

90. Plaintiff repeats and realleges those allegations of the complaint marked and designated as Paragraphs 1 through 89 with the same force and effect as if herein set forth at length and further alleges that:

91. The agreements between Mr. Shelton and Defendants are valid, binding and enforceable agreements.

92. As valid, binding and enforceable agreements, each and every one of the agreements at issue has an implied covenant of good faith and fair dealing in the course of performance.

93. Defendants' failures to honor their obligations to set up a corporation and procure a letter of credit for Mr. Shelton have injured the rights of Mr. Shelton to enjoy the fruits of his agreements and have impaired the value of the agreements.

94. As a result of Defendants' breaches of the implied covenants of good faith and fair dealing in the parties' agreements, Mr. Shelton has suffered damages in an amount no less than $52,550 plus interest.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Deceptive Acts and Practices New York Pursuant to <u>New York General Business Law §§ 349.</u>)

95. Plaintiff repeats and realleges those allegations of the complaint marked and designated as Paragraphs 1 through 94 with the same force and effect as if herein set forth at length and further alleges that:

96. Defendants Sethna, Bank Card and Bison were engaged in deceptive business acts and practices directed at consumers, including individuals seeking to secure commercial lines of credit.

97. Defendants' deceptive acts and practices were materially misleading to individuals seeking commercial lines of credits and bank guarantees.

98. As a result of Defendants' deceptive acts and practices, Shelton has suffered injuries including, but not limited to, the loss of $52,550.00, the failure of the Galesburg Project and the loss of business reputation.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount no less than $20,052,550.00 including (a) compensatory damages, consequential damages, incidental damages, punitive damages and lost profits; (b) attorneys' fees and costs of suit; (c) pre-judgment and post-judgment interest and (d) such other relief as the court may deem just and appropriate.

Dated: New York, New York
May 20, 2010

The Law Offices of Steven E. Armstrong PLLC

By: Steven E. Armstrong (SA-2418)
Evan S. Rothfarb, *Of Counsel* (ER-9227)
100 Chuch Street, 8th Floor
New York, New York 10007
Ph.# (646)708-3658
Fax# (646)845-7301
*Attorneys for Plaintiff*