UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                                :
RICHARD SHELTON,                                :
                                                :
                         Plaintiff,             :    10 Civ. 4218 (TPG)
                                                :
        – against –                             :    **OPINION**
                                                :
BURGIS D. SETHNA, individually and as           :
officer of Bank Card New York and Bison         :
Leasing Commercial Corp., BANK CARD             :
NEW YORK and BISON COMMERCIAL                   :
LEASING CORP.,                                  :
                                                :
                         Defendants.            :
------------------------------------------------x

This action arises from an attempt by plaintiff Richard Shelton to secure a $500,000 letter of credit from defendants Burgis Sethna, Bison Commercial Leasing Corporation, and Bank Card New York. Plaintiff never received the letter of credit, so he has sued for fraud, breach of contract, quantum meruit, unjust enrichment, violation of the implicit covenant of good faith and fair dealing, and deceptive business practices in contravention of N.Y. Gen. Bus. Law § 349. Plaintiff now moves for summary judgment on all counts, and defendants cross-move for summary judgment. Defendants also move to dismiss all counts for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Defendants' motion to dismiss for lack of subject matter jurisdiction is denied, defendants' motion to dismiss for failure to state a claim is granted in part, and the cross-motions for summary judgment are denied.

**The Complaint**

The following facts are drawn from the complaint and assumed to be true for purposes of this motion.[1]

In 2007, plaintiff, a real estate developer, was set to embark on a new venture. Having identified a property in Galesburg, Illinois as a promising site for the development of a retirement community, he entered into a contract to purchase the site and its structures for $875,000. Plaintiff envisaged the renovation of an existing building into residential units, followed by the construction of cottages for duplex units and the possibility of further construction if warranted by demand. Plaintiff projected, based upon his experience in the field of retirement housing, that the development would generate $1,500,000 in monthly revenues, yielding an eventual profit of $20,000,000 after 60 months.

To finance the first phase of the project, plaintiff sought a construction loan of $15,000,000. After making inquiries, plaintiff learned that he could secure a construction loan by demonstrating $2,000,000 of current liquidity. Lacking that liquidity, plaintiff sought a third party to supply the $2,000,000 that would enable him to secure the construction loan that would, in turn, enable him to break ground on the retirement development.

On October 1, 2007, plaintiff was introduced to Burgis Sethna ("Sethna").

---

[1] As will be discussed in more detail below, the court denies the cross-motions for summary judgment without prejudice. Accordingly, the facts are presented in the manner suited to a motion to dismiss under Rule 12.

Sethna is a New York resident and officer and director of two New York corporations—Bison Commercial Corporation ("Bison") and Bank Card New York ("Bank Card")—which are alleged to be his alter egos.

During his interaction with plaintiff, Sethna claimed that he could obtain a $500,000 letter of credit for plaintiff in exchange for $35,500. He stated that the proceeds of the letter of credit could then be parlayed into a letter of credit for $2,000,000. Several days later, before the arrangement had been agreed upon, Sethna requested that plaintiff send $17,000 payable to Bank Card so that Sethna could purchase a shell corporation for plaintiff to facilitate the acquisition of the $500,000 letter of credit. Shortly thereafter, plaintiff sent $17,000 to Bison. It evidently did not matter what entity received the money, as, on December 5, 2007, the parties agreed that Sethna, through Bison or Bank Card, would secure a letter of credit for plaintiff within 90 days in exchange for $35,500. That same day, Sethna memorialized the agreement in a written assurance (issued on Bison letterhead) stating that in exchange for $35,550,[2] Sethna would secure the aforementioned letter of credit within 90 days from Latin Tiger Funding LLC ("Latin Tiger"). In reliance on the written assurance, plaintiff purchased a $5,000 option to extend the time to finalize his purchase of the Galesburg property.

On December 18, 2007, plaintiff sent $35,500 to Bison. However, the promised letter of credit never arrived. Plaintiff's closest brush with financing

---

[2] The complaint itself states that plaintiff was to pay $32,500, but the sum mentioned everywhere else in the complaint is $35,500, and plaintiff submitted an affidavit in his motion for summary judgment stating that the $35,500 is the appropriate number to use.

- 3 -

came on May 12, 2008, when he received a fax from Latin Tiger containing a contract offering a $500,000 letter of credit in exchange for $87,500. Plaintiff, puzzled by the increased fee, sought an explanation from Sethna, who initially said that the fee had grown because plaintiff paid the $35,500 late and later said that the fee had grown because it included the first year of interest on the letter of credit. On another occasion, plaintiff asked why the Latin Tiger contract did not mention interest, and Sethna responded that interest had been waived. Lastly, Sethna at one point claimed that the $35,500 fee paid by Sethna did not concern the $500,000 letter of credit at all but was instead consideration for a lesser $250,000 letter of credit.

In the wake of these contradictory explanations for the $87,500 fee, plaintiff refused to sign the Latin Tiger contract. Thereafter, in the fall of 2008, Sethna approached plaintiff with a credit application from an entity called Creditline America. Plaintiff's prior payments, however, were not credited towards any fees payable to Creditline. Furthermore, Sethna had pre-filled the credit application with information plaintiff considered false. As a result, plaintiff refused to submit the Creditline application. Plaintiff later resisted an effort to secure a letter of credit through a private placement arranged by Sethna, on the ground that the transaction would have involved making false statements. The final proposed transaction surfaced in 2009, when Sethna claimed that plaintiff could receive his financing by crediting his payments toward an ownership interest in biodiesel plant. It appears, however, that plaintiff never invested in said plant, as Sethna did not demonstrated that it

actually existed.

In short, plaintiff alleges a series of obfuscations intended to deprive him of the $52,500 he paid to Sethna. As a result of Sethna's actions, plaintiff claims to have lost $52,500 out of pocket, $5,000 for the option payment on the Galesburg property, interest of $18,000 on the money paid to Sethna, and lost profits in the sum of $20,000,000. Plaintiff also claims that the unwinding of his various plans damaged his credit score.

Based on these allegations, plaintiff brings six claims. First, he alleges that defendants committed fraud by failing to deliver the letter of credit. Second, he alleges that defendants breached a contract between the parties by failing to deliver the letter of credit. Third, he seeks to recover the money he paid Sethna in quantum meruit. Fourth, he seeks to recover the amount by which defendants were unjustly enriched. Fifth, he alleges that defendants breached the covenant of good faith and fair dealing implied in the contract between the parties. Sixth, he alleges that defendants engaged in deceptive acts or practices in the conduct of business in violation of N.Y. Gen. Bus. Law § 349.

Plaintiff seeks to recover the aforementioned sums, attorneys' fees, punitive damages, and all other relief available to him in law or equity.

**Case History and the Present Motions**

Plaintiff filed his complaint on May 25, 2010, and defendants answered on August 13, 2010. On November 9, 2010, the court held a preliminary conference in the case. At this conference, defendants' former counsel claimed

that documents existed to substantiate defenses asserted in the answer. The court urged defendants to turn over the documents to plaintiff, and a conference was tentatively set for early 2011 to discuss the matter further.

However, defendants never produced the documents, and on January 26, 2011, defense counsel moved to withdraw due to his client's lack of cooperation. The court granted the motion to withdraw at a hearing on February 16, 2011. Upon learning of defendants' intransigence at the hearing, the court suggested that plaintiff move for summary judgment. Plaintiff did so on March 18, 2011.

On May 13, 2011, defendants secured new counsel, who has since represented them. Defendants now cross-move for summary judgment and move to dismiss the complaint for failure to state a claim and lack of subject matter jurisdiction. Confronted with an unexpected cross-motion, plaintiff contacted defendants in an attempt to secure the voluntary withdrawal of the summary judgment motions. Defendants, however, refused to withdraw their cross-motion. Plaintiff now asserts that the summary judgment motions are premature due to the lack of discovery in this action. He also opposes the motions to dismiss on the merits.

## Discussion

<u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

Defendants argue that this court does not have subject matter jurisdiction over the present action because plaintiff has not established the

requisite amount in controversy to establish diversity jurisdiction. Defendants argue that plaintiff can at best recover $52,500, since his claim for $20,000,000 in lost profits is entirely speculative.

    28 U.S.C. § 1332 grants federal district courts jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000. Plaintiff bears the burden of proving to a reasonable probability that the jurisdictional prerequisites have been met in this case. See <u>Moore v. Betit</u>, 511 F.2d 1004, 1006 (2d Cir. 1975). "This burden is hardly onerous, however, for we recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." <u>Scherer v. Equitable Life Assurance Soc'y of U.S.</u>, 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation omitted). Nonetheless, if defendants can show "to a legal certainty" that plaintiff cannot recover the damages in excess of the jurisdictional amount, the court should dismiss the case for lack of subject matter jurisdiction. <u>Id.</u> But if there is any legal basis for a recovery in excess of the jurisdictional requisite, "even where allegations leave grave doubt about the likelihood" of that recovery, "dismissal is not warranted." <u>Zacharia v. Harbor Island Spa, Inc.</u>, 684 F.2d 199, 202 (2d Cir. 1982).

    Defendants have not demonstrated to a legal certainty that plaintiff's lost profits cannot be recovered. Under New York law, consequential damages that are reasonably foreseeable to the contracting parties can be recovered in a breach of contract action. See <u>Chapman v Fargo</u>, 223 N.Y. 32, 36-37 (N.Y. 1918). Pursuant to this principle, reasonably foreseeable lost profits can be

recovered so long as they are not purely speculative. See Wakeman v. Wheeler & Wilson Mfg. Co., 101 N.Y. 205, 214-215 (N.Y. 1886). Lost profits, however, are difficult to prove and recover when they concern a new and untested business, see Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261 (N.Y. 1986).

Here, plaintiff claims that had his venture gone forward, he would have reaped $20,000,000 in profit in 60 months. He further alleges that defendants were aware of this fact when they breached the contract at issue, and that defendants' breach caused the venture to fail. These statements suffice to state a colorable claim for lost profits under New York law. Plaintiff's claim may fail on the merits, but a weak claim does not warrant dismissal for lack of subject matter jurisdiction.

Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). In deciding such a motion, a court must accept as true the facts alleged in the complaint, but it should not assume the truth of legal conclusions. Iqbal, 129 S.Ct. 1937 at 1950. A court must also draw all reasonable inferences in the plaintiff's favor, and it may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Breach of Contract

The court begins with Count Two of the complaint, which alleges breach of contract, since the bulk of plaintiff's allegations concern the commercial relationship between the parties.

Defendants argue that plaintiff fails to state a claim for breach of contract, because he has not alleged the existence of a definite agreement between the parties.

To state a claim for breach of contract, plaintiff must allege sufficient facts concerning "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011). The complaint alleges that Sethna orally agreed to secure a $500,000 letter of credit within 90 days in exchange for $35,500. What's more, plaintiff alleges the existence of a writing memorializing this agreement. Plaintiff then details how he paid $35,500, how defendant did not secure the letter of credit, and how this failure to perform caused plaintiff damages. Furthermore, the court can reasonably infer from the complaint that Sethna's agreement bound the corporate defendants as well, because Sethna offered to secure the letter of credit through Bison and/or Bank Card.

Sethna also allegedly requested $17,000 to purchase a shell corporation to facilitate the acquisition of the letter of credit. Plaintiff paid the money, and it appears Sethna purchased the shell corporation. Construed in the light most favorable to plaintiff, this transaction, clearly brought about in anticipation of the letter-of-credit deal, constitutes an additional term in the contract between

the parties.

Defendants claim that these allegations fail on the agreement element for lack of definiteness. Under the doctrine of definiteness, if "an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." Martin Delicatessen v. Schumacher, 436 N.Y.S.2d 247, 249-250 (N.Y. 1981). The agreement outlined above contains clear obligations on the part of both parties as well as a clear time for performance. Indeed, it is hard to discern what the agreement lacks, and defendants do not point to any particular deficiency. Thus plaintiff has stated a claim for breach of contract.

Fraud

Defendants seek to dismiss Count One of the complaint, which alleges fraud, as duplicative of the breach of contract claim.

To state a claim for fraud, plaintiff must plead sufficient facts concerning: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997). In addition, a fraud claim in federal court is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which states that a party "alleging fraud or mistake…must state with particularity the circumstances constituting fraud or mistake." Under Rule 9(b), plaintiff "'must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

fraudulent.'" Watral v. Silvernails Farm LLC, 51 Fed. Appx. 62, 65 (2d Cir. 2002) (internal quotation omitted).

Furthermore, under New York law, a fraud claim cannot derive wholly from a defendant's false statement of an intent to perform under a contract. See Papa's-June Music v. McLean, 921 F. Supp. 1154, 1160 (S.D.N.Y. 1996). Rather, to "say that a contracting party intends when he enters into an agreement not to be bound by it is not to state 'fraud' in an actionable area, but to state a willingness to risk paying damages for breach of contract." Briefstein v. P.J. Rotondo Constr. Co., 187 N.Y.S.2d 866, 868 (N.Y. App. Div. 1st Dep't 1959). This doctrine applies regardless of whether such a statement is uttered before or after the contract has been formed. See Metro. Transp. Auth. v. Triumph Adver. Prod., Inc., 497 N.Y.S.2d 673, 675 (N.Y. App. Div. 1st Dep't 1986).

Nonetheless, "it does not follow that because acts constitute a breach of contract they cannot also give rise to liability in tort." Hargrave v. Oki Nursery, Inc., 636 F.2d 897, 899 (2d Cir. 1980). To sustain both his fraud claim and his breach of contract claim, plaintiff must 1) allege a fraud concerning a "legal duty separate from the duty to perform under the contract," 2) allege a fraud concerning "a misrepresentation collateral or extraneous to the contract," or 3) seek "special damages that are caused by the misrepresentation and unrecoverable as contract damages...." Bridgestone/Firestone v. Recovery Credit Servs., 98 F.3d 13, 20 (2d Cir. 1996).

Here, plaintiff does not allege that defendants owed him any special duty

beyond their obligations to perform under the contract between the parties. Moreover, plaintiff does not seek special damages pursuant to the fraud claim. The "only concrete loss to which he can point" concerns "contract damages, not fraud damages." See Sudul v. Computer Outsourcing Servs., 868 F. Supp. 59, 63 (S.D.N.Y. 1994). Thus plaintiff's claim for fraud can only survive if it concerns misrepresentations collateral or extraneous to the contract.

Plaintiff argues that his complaint is replete with false statements made by the defendant that state an independent claim for fraud. The court addresses these statements in the order they appear in the complaint.

First, Sethna allegedly told plaintiff he would secure a $500,000 letter of credit in exchange for $35,500. Critically, plaintiff claims that this statement was false only insofar as Sethna had no intention of actually securing the letter of credit.[3] This is precisely the sort of misrepresentation that, even if repeated throughout the course of the parties' commercial relationship and reasonably relied upon by plaintiff, cannot support a claim for fraud in New York.

Second, Sethna allegedly stated on October 7, 2007 that an immediate purchase of a shell corporation for $17,000 was necessary to secure the $500,000 letter of credit. Plaintiff then sent Sethna $17,000. This transaction, as noted above, constitutes part of the contractual claim made by plaintiff. However, Sethna's statement contains two factual assertions collateral to the contract: 1) that the letter of credit could not be secured without the shell

---

[3] The complaint does not, for example, allege that defendants made false representations about their financial health or other collateral facts bearing on the eventual contract. Compare WIT Holding Corp. v. Klein, 724 N.Y.S.2d 66, 68 (N.Y. App. Div. 2d Dept. 2001).

- 12 -

corporation; and 2) that the shell corporation had to be purchased immediately. Furthermore, plaintiff clearly relied on the truth of these statements when he mailed the money. Nevertheless, these collateral assertions cannot support a fraud claim as the complaint is presently pleaded, because plaintiff does not even allege that these assertions were false, much less why they were false, as required by Rule 9(b).

Third, the complaint details a number of transactions that Sethna proposed to plaintiff—the Latin Tiger contract, the Creditline application, the "private placement," and the biodiesel plant investment.  Sethna allegedly made the following false statements in relation to these transactions: 1) contradictory explanations for the fees in the Latin Tiger contract; 2) pre-filled false information in the Creditline application; 3) false statements about plaintiff in the course of the private placement transaction; and 4) outright fabrication of the biodiesel venture. None of these falsehoods, however, can give rise to a fraud claim, because plaintiff did not rely upon them. Indeed, the complaint states with some specificity plaintiff's contemporaneous doubts about these statements and his consequent refusal to pursue any of the proposed transactions.

Plaintiff argues that he relied on these false statements in that they deterred him from suing for breach of contract earlier. This argument fails because it does not involve reliance on the truth of the statements actually uttered by Sethna. Rather, plaintiff claims to have relied upon a message *implied* by the false statements—that Sethna was still trying to honor the

contract. This sort of subjective inference cannot give rise to fraud liability, and in any event, the implied message is duplicative of plaintiff's breach of contract claim.

Since plaintiff fails to plead a fraud arising from misrepresentations collateral to his contract claim, Count One of the complaint is dismissed as duplicative of plaintiff's breach of contract claim.

Quantum Meruit and Unjust Enrichment

Defendants argue that Counts Three and Four of the complaint, which allege quantum meruit and unjust enrichment, must be dismissed because plaintiff is seeking to recover on a contract.

Unjust enrichment "is a required element for an implied-in-law, or quasi contract, and quantum meruit…is one measure of liability for the breach of such a contract." Seiden Assoc., Inc. v. ANC Holdings, Inc., 768 F. Supp. 89, 96 (S.D.N.Y. 1991). Thus the two claims are properly analyzed as a single claim for restitution sounding in quasi contract. See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. N.Y. 1996). In the present case, the factual allegations concerning breach of contract also suffice to state a claim for quasi-contract. [4]

---

[4] Although under New York law, claims for quantum meruit and unjust enrichment are to be analyzed as one, their elements differ, at least nominally. Compare Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 69 (2d Cir. 2000) ("In order to recover in quantum meruit, New York law requires a claimant to establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.") with Giordano v. Thomson, 564 F.3d 163, 170 (2d Cir. 2009) ("Under New York law, a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant."). For present purposes, these differences—which bear on the measurement of

Case 1:10-cv-04218-TPG   Document 45   Filed 03/26/12   Page 15 of 19

Plaintiff, however, cannot ultimately recover on both his quasi contract claim and his breach of contract claim. See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 521 N.Y.S.2d 653, 656 (N.Y. 1987). But at this stage of the litigation, when "there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue," a plaintiff may proceed upon a theory of quasi contract and need not elect his or her remedies. Joseph Sternberg, Inc. v. Walber 36th St. Assocs., 594 N.Y.S.2d 144, 146 (N.Y. App. Div. 1st Dep't 1993).

In the present case, there is obviously a bona fide dispute as to the existence of a valid contract between the parties. Indeed, defendants have argued that no such contract exists. Although the court has rejected that argument for present purposes, defendants can, of course, dispute the existence of the contract going forward as the facts permit. In light of this dispute, the court will not dismiss plaintiff's quasi-contract claims.

Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant's next argue that Count Five, which alleges breach of the implied covenant of good faith and fair dealing, must be dismissed because either 1) no contract existed between the parties or 2) the claim is duplicative of plaintiff's breach of contract claim.

The implied covenant of good faith and fair dealing "is implied in all contracts" and "embraces a pledge that neither party shall do anything which

---

damages and the contextual facts of performance—are not germane. As the case proceeds, however, it may become clear that one of the types, so to speak, of quasi-contract better fits the facts than the other.

- 15 -

will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Fishoff v. Coty, Inc., 634 F.3d 647, 653 (2d Cir. 2011). However, a breach of the implied covenant of good faith and fair dealing "is merely a breach of the underlying contract." Fasolino Foods Co. v. Banca Nazionale Del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992); see also Boscorale Operating, LLC v. Nautica Apparel, Inc., 749 N.Y.S.2d 233, 234 (N.Y. App. Div. 1st Dep't 2002) (stating that the implied covenant of good faith and fair dealing is "part and parcel" of the underlying contract). Accordingly, a breach of the implied covenant of good faith and fair dealing can give rise to a claim for breach of contract, but it cannot give rise to a second, freestanding cause of action. See B. Lewis Prods. v. Angelou, No. 01 Civ. 0530, 2005 U.S. Dist. LEXIS 9032, at *35 (S.D.N.Y. Apr. 26, 2005). Thus Count Five is dismissed.

<u>New York General Business Law § 349</u>

Defendants next argue that plaintiff's claim under N.Y. Gen. Bus. Law § 349 must be dismissed, because the dispute between the parties was purely personal and not consumer-oriented.

N.Y. Gen. Bus. Law § 349 forbids "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Despite this facially broad language, the law "was intended to be a consumer protection statute." Teller v. Bill Hayes, Ltd., 630 N.Y.S.2d 769, 772 (N.Y. App. Div. 2d Dep't 1995). Thus, plaintiff must, "at the threshold, charge conduct that is consumer oriented. The conduct need not be repetitive

or recurring but defendant's acts or practices must have a broad impact on consumers at large." New York Univ. v. Cont'l Ins. Co., 639 N.Y.S.2d 283, 290 (N.Y. 1995). Moreover, private contract disputes that are unique to the parties do not fall within the ambit of the Section 349. See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 623 N.Y.S.2d 529, 532 (N.Y. 1995).

Plaintiff does not claim that defendants' actions impacted anyone other than himself. Thus plaintiff fails to make the threshold showing necessary to state a claim under N.Y. Gen. Bus. Law § 349, so Count Six is dismissed.

Breach of Contract Against Sethna

Lastly, defendants claim that Sethna cannot be held personally liable for any breach of contract on the part of corporate defendants Bison and Bank Card.

Generally, a "director of a corporation is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken." Murtha v. Yonkers Child Care Ass'n, 411 N.Y.S.2d 219, 220 (N.Y. 1978) (internal quotation omitted). However, this rule only applies if it appears that the corporate officer is "acting in good faith as an officer." Buckley v. 112 Central Park South, Inc., 136 N.Y.S.2d 233, 236 (App. Div. 1954). Thus an individual officer can be held liable for a corporate defendant's breach of contract if the corporation served as the alter ego of the officer. See Kaliner v.

Mt. Vernon Monetary Mgmt. Corp., No. 07 Civ. 4643, 2008 U.S. Dist. LEXIS 67456, at *7-8 (S.D.N.Y. Sept. 3, 2008). Under New York law, two elements must be pleaded to invoke the alter ego theory: "(1) that the parent exercised such complete domination in respect to the transaction attacked that the subsidiary had at the time no separate will of its own, and (2) that this domination was used to commit fraud or wrong against the plaintiff, which proximately caused the plaintiff's injury." Zinaman v. USTS New York, Inc., 798 F. Supp. 128, 132 (S.D.N.Y. 1992) (internal quotations omitted).

In the present case, plaintiff has alleged generally that Sethna promised to secure the letter of credit "directly and through his various corporate alter egos." Plaintiff goes on to allege specific facts that support reasonable inferences that 1) Sethna himself was party to the contract, 2) Sethna wholly dominated Bank Card and Bison, and 3) Sethna dominated the corporate defendants in a way that worked a wrong against plaintiff. For instance, plaintiff never dealt with any other person besides Sethna, Sethna referred to Bank Card and Bison interchangeably, Sethna was able to access funds sent to Bison, and Sethna in bad faith failed to deliver the letter of credit. While plaintiff will ultimately bear a "heavy burden" of establishing that Bison and Bank Card in fact served as Sethna's alter egos, the complaint states plausible claims against Sethna as well as the corporate defendants.

The Summary Judgment Motions

The cross-motions for summary judgment in this case consist largely of conflicting affidavits from the two principal parties in the case, Shelton and

Sethna. No discovery has occurred in the case to date. It is plainly inappropriate to grant either motion in this situation. See, e.g., Sutera v. Schering Corp., 73 F.3d 13, 18 (2d Cir. 1995).

As noted above, plaintiff moved for summary judgment at the urging of the court, at a time when defendants were flouting their discovery obligations and otherwise obstructing the litigation. Since securing new counsel, defendants have acted appropriately in the case, and the court anticipates that they will continue to do so. In these circumstances, it is proper to deny the cross-motions for summary judgment with leave to renew at the close of discovery.

## Conclusion

For the foregoing reasons, the cross-motions for summary judgment are denied. Defendants' motion to dismiss for lack of subject matter jurisdiction is denied, and defendants' motion to dismiss for failure to state a claim is granted only insofar as counts 1, 5, and 6 of the complaint are dismissed. This opinion resolves docket items numbers 13, 27, and 28.

Dated:  New York, New York
        March 26, 2012

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/26/12
```

_____
Thomas P. Griesa
U.S.D.J.